Ernest A. RACY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–334.

Court of Criminal Appeals of Oklahoma.

March 8, 1974.

Nicholas D. Garrett, O. Christopher Meyers, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., William Thiebaut, Jr., Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court, Comanche County, Case No. CRF–72–665, appellant, Ernest A. Racy, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Illegal Delivery and Distribution of Marijuana. His punishment was fixed at five (5) years imprisonment and a fine of one thousand dollars ($1,000). From said judgment and sentence, he has perfected his timely appeal to this Court.

The evidence adduced at trial from the testimony of Larry Smith, Provost Marshal Investigator with the United States Army, revealed that on July 28, 1972, he, David Peel (a confidential informant) and Richard Arries met with defendant at a service station located at 11th and East Lawton, Lawton, Oklahoma. Upon arrival, Smith and Arries approached the defendant at the station and Arries inquired of the defendant whether or not the defendant "had any of the pound of weed they scored earlier" that day. Defendant replied that he had "broken the weed down" and asked Smith if he desired to make a purchase. Subsequently, Smith, along with his companions, while being followed by the defendant, drove his car to a location approximately three blocks from the service station. At this location was parked a light colored 1955 Volkswagen Van which the testimony later revealed belonged to the defendant. Defendant unlocked the van, opened the doors, layed across the floor of the van, reached behind the driver's seat, pulled out a black cloth, pulled a sack out, and sat up in the van. Defendant removed six "lids" of marijuana from the bag and threw them on the floor of the van. Thereafter, Arries took possession of four of the lids with defendant instructing Arries that if he sold the four lids, defendant would supply him more. Smith stated that the agreed price was $13 per lid and for that reason he produced $26; that defendant handed four lids of marijuana to Arries and handed two lids to Smith; that defendant made a motion to put the money in his front pocket; and, that following the transaction, Smith along with his companions left the van.

Gary Lawrence, special agent Army CID Command, testified he met with Smith after the transaction and received two lids of

what appeared to be marijuana. Lawrence dated and initialed the packages containing the suspected contraband, identified as State's Exhibit 1, and secured this exhibit in a safe. Subsequently, Lawrence contacted Robert Vianna, the evidence custodian, and released State's Exhibit 1 to him. On August 7, 1972, Lawrence received State's Exhibit 1 from Vianna, packaged and sealed it and sent it to Fort Gordon, Georgia, via registered mail, for a chemical analysis.

Robert Vianna testified that on July 28, 1972, he was evidence custodian at Fort Sill; that he received State's Exhibit 1 from Lawrence at the mentioned time; that he initialed the contents of State's Exhibit 1 and gave them an evidence number; and, that the content of State's Exhibit 1 was kept under his supervision in the evidence room until August 7, 1972, and was redelivered to Lawrence on this date.

John Williamson, forensic chemist at the Fort Gordon Crime Lab, testified that he examined the contents of State's Exhibit 1, and found the substance to be marijuana. Regarding the chain of custody, Williamson testified to facts regarding the standard procedures in handling evidence received via certified mail, indicating he received State's Exhibit 1 from his chief chemist, who in turn received it from a registered mail clerk. Further, he stated that upon receipt of evidence at the laboratory, the standard procedure in the office is that evidence is kept secured in a safe before and after analysis.

Thereafter, the State rested.

For the defense the testimony of David Peel, introduced at preliminary hearing, was read to the jury without objection of counsel. This testimony revealed that on July 28, 1972, Peel was stationed at Fort Sill, Oklahoma, and acted undercover for the United States Army in the instant case. In substance, his testimony substantiated that testimony of other witnesses. However, Peel's description of the particulars of the transaction indicated Smith, Arries and defendant entered and seated themselves inside of the van prior to the transaction. Smith was seated to the left of Arries with defendant seated to Arries' immediate right. Upon agreement of the purchase price, Smith delivered to Arries $26 who in turn delivered the money to defendant. Thereafter, defendant delivered the money back to Arries. After the receipt of the money, Arries obtained the marijuana from the van, took possession of four lids (apparently for the purpose of subsequent deliveries), handed two lids to defendant, who in turn returned the two lids to Arries. Thereafter, Arries handed the two lids of marijuana to Smith.

Defendant testified that he was the owner of the Volkswagen van in which this transaction occurred. However, he stated that he and Arries were roommates at the time this purported transaction was made. Further, he stated that he discovered that Arries had stored this marijuana in his van and on several occasions prior to the date of the transaction, he demanded Arries remove the marijuana. Generally, defendant's testimony established the defense that it was not his marijuana and the transaction was between Arries and Smith.

Finally, the defense called Charles Zehnor and Robert Beale, who testified as to defendant's good reputation and character in the community. Thereafter, the defense rested.

Defense counsel asserts in his first proposition that the evidence is insufficient to support the verdict. His argument primarily turns upon the premise that defendant is a conduit through which the contraband passed, the agent of the purchaser, and, consequently, cannot be considered a distributor. We find this argument to be without merit. The conduit theory adopted in Posey v. State, Okl.Cr., 507 P.2d 576 (1973) is upon its facts distinguishable from the instant case. In the instant case, the controversy within the evidence raises a factual question of whether defendant or his companion was the actual distributor. Assuming arguendo the conduit theory to be applicable to one of these participants, the evidence both direct and circumstantial is legally sufficient to sub-

**378**

mit to the jury the question of whether defendant actually distributed the contraband. Where there is a conflict in the evidence, it is the exclusive province of the jury to weigh the evidence and determine the facts and it is beyond the scope of review of the Court of Criminal Appeals to invade the province of the jury in its determination of such a factual issue. See Enoch v. State, Okl.Cr., 495 P.2d 411 (1972). We therefore find this proposition to be without merit.

■ Defense counsel next argues the chain of custody regarding State's Exhibit 1 is not complete and, consequently, is therefore not admissible. This argument turns upon the assumption of the failure of the State to produce evidence regarding the specific details in handling of State's Exhibit 1 while in possession of employees of the government chemist, thus rendering a fatal break in the chain of custody. We first of all note that transmission of this evidence through the United States mail is, under proper circumstances, an acceptable method of transmitting evidence and does not break the chain of custody of said evidence. See Blanco v. State, Okl.Cr., 509 P.2d 491 (1973). We further note that where there is bearest speculation that tampering could have occurred, it is proper to admit the evidence and let what doubt there may be go to its weight rather than render the evidence completely inadmissible. See Trantham v. State, Okl.Cr., 508 P.2d 1104 (1973). We conclude that in viewing the evidence of chain of custody only the bearest speculation would permit us to conclude that tampering with the evidence did occur. The evidence submitted in support of the chain of custody is sufficient to render State's Exhibit 1 admissible. Consequently, although all persons who handled State's Exhibit 1 were not called as witnesses, the chain of possession was nevertheless substantially established and the proof adequate to sustain the foundation for admissibility. We therefore find this proposition to be without merit.

In defense counsel's final proposition, it is submitted that the punishment is excessive.

■ We have repeatedly held that the question of excessive punishment must be determined by a study of all the facts and circumstances in each particular case. Coupling the fact that the jury's conclusion of defendant's guilt is supported by the evidence, with the other facts and circumstances surrounding the offense, we find the punishment does not shock this Court's conscience. We have repeatedly held that unless the punishment imposed shocks the conscience of this Court, we will not disturb the jury's verdict. Jackson v. State, Okl.Cr., 494 P.2d 358 (1972). We therefore find this proposition to be without merit.

The judgment and sentenced is affirmed.

BRETT, J., concurs in results.

BUSSEY, J., concurs.